WINSLOW WARREN, trustee, *vs.* STREET COMMISSIONERS
OF THE CITY OF BOSTON.

EBEN D. JORDAN & others, trustees, *vs.* SAME.

Suffolk.    November 18, 1904. — January 7, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, & BARKER, JJ.

*Tax.   Constitutional Law.   Boston.*

The Legislature may authorize the re-assessment of a betterment tax if the original
assessment has failed because of informality or other defect.

The assessment of betterments, if other necessary conditions exist, may be author-
ized by the Legislature as well after as before the expenditure is incurred.

St. 1902, c. 527, authorizing assessments of betterments to be made within one year
after the passage of the act for certain public improvements in Boston com-
pleted by that city within six years before the passage of the act, is constitu-
tional, and was enacted to enable the city to assess betterments in cases where
on account of the unconstitutionality of previous statutes or of illegality in the
proceedings under them a valid assessment otherwise could not be made; there-
fore it includes authority to assess betterments for expenditures in the construc-
tion of Huntington Avenue which were illegal when incurred.

St. 1902, c. 527, authorizing the re-assessment of betterments for certain improve-
ments in Boston for which the previous assessments had been invalid by reason
of unconstitutionality of statutes or of illegality in incurring the expenditures
for which the assessments were made, is not unconstitutional on account of its
provision exempting from such assessment the estates of owners who voluntarily
have paid former invalid assessments in full and cannot recover them back,
because under this statute only an amount not exceeding one half of the ex-
penses incurred for the improvement can be assessed, and the Legislature is
presumed to have assumed that all previous invalid assessments that had been
paid in full without protest were greater than could be assessed under the pres-
ent statute and therefore that the owners of other estates cannot suffer from
their exemption.

KNOWLTON, C. J.    These are petitions for a writ of certiorari
to quash the proceedings of the street commissioners of Boston
in assessing betterments under the St. 1902, c. 527, for the lay-
ing out, extension and construction of Huntington Avenue.  Our
decision will depend upon the construction to be given to this
statute.    It was passed on June 27, 1902, and is a law giving
general authority to the street commissioners of Boston to assess
betterments for public improvements completed by the city within
six years before its enactment, " consisting of laying out, relo-
cating, altering or widening, with or without construction or

sewer, a highway, or a highway and parkway, public way or public alley, or of changing the grade of, or constructing with or without a sewer, a highway, or a highway and parkway," etc.    At that time assessments of betterments in Boston under different statutes had been held invalid by this court, in some cases on account of the unconstitutionality of the statute, and in others on account of irregular or illegal action of the public authorities in proceedings on which the assessments were founded.    *Lorden* v. *Coffey,* 178 Mass. 489.    *Warren* v. *Street Commissioners,* 181 Mass. 6 ; *S. C.* 183 Mass. 119.    See *Harwood* v. *Street Commissioners,* 183 Mass. 348; *White* v. *Gove,* 183 Mass. 333.    It was supposed that there were other invalid assessments, or other public improvements to pay the cost of which assessments of betterments had been contemplated, which in view of these decisions could not then be legally made.    Huntington Avenue had been constructed at an expense to the city of about $675,000, in disregard of the requirements of the statutes as to the mode of doing the work.    An assessment of betterments for this construction had been held to be invalid, because of the violation of law that entered into the cost of the work which the abutters were asked to pay.    *Warren* v. *Street Commissioners, ubi supra.*    It seemed that no part of this cost could be assessed upon the estates specially benefited, without additional legislation.    Under these circumstances the act in question was passed.

Two questions arise under it : One is whether the Legislature constitutionally could authorize a re-assessment of betterments from the construction of Huntington Avenue, so as to include in the assessment a portion of the expenditures made in violation of the statute ; the other is whether the Legislature intended to authorize such a re-assessment.    As to the first question, the counsel for one of the petitioners concedes that the Legislature may authorize the re-assessment of a betterment tax if the original assessment failed because of informality or other defect.    But we have before us an argument that the statute, if construed according to the contention of the respondents, is unconstitutional.

The assessment of betterments under statutes of this kind is simply a mode of special taxation to meet the expenses of gov-

ernment in making public improvements which specially benefit particular property. If the other necessary conditions exist, such taxation may be authorized after, as well as before, the expenditure is incurred. *Hall* v. *Street Commissioners*, 177 Mass. 434, and cases there cited. This proposition includes, of course, the authorization of a re-assessment to take the place of one which is void for irregularity or error. *State* v. *Mayor & Common Council of Newark*, 5 Vroom, 236. *Dean* v. *Charlton*, 27 Wis. 522. *In re Piedmont Avenue East*, 59 Minn. 522. *Manley* v. *Emlen*, 46 Kans. 655. *Musselman* v. *Logansport*, 29 Ind. 533. *Chicago* v. *Sherman*, 212 Ill. 498. If the defect that makes the assessment void is an irregularity or error which the Legislature might have authorized, or an omission of that which it might have dispensed with by a proper statute, it is not beyond the power of the Legislature to correct the error by a subsequent act. The illegality in this case, which rendered the former assessment void, was a disregard of the requirements of the statutes that the work should all be done by contract, that the number of contracts should not exceed five, and that when work was to be done by the superintendent of streets the estimated cost of which was $2,000 or more he should invite proposals therefor by advertisements in daily newspapers unless he had authority in writing from the mayor to do otherwise. There was a wide and apparently deliberate departure from these requirements, which relieved abutters from liability to special assessment to meet such expenditures under the St. 1894, c. 416. *Warren* v. *Street Commissioners*, 181 Mass. 6. But the only illegality was the failure to observe the methods which had been prescribed for the protection of taxpayers. It was in the power of the Legislature to authorize the performance of such public work precisely as this was performed. The methods adopted may or may not have caused the city substantial loss. However that may be, notwithstanding the previous disregard of the law, it was in the power of the Legislature to relieve the general taxpayers by assessing a part of this expense upon estates specially benefited. So far as appears, the expenditures were not of such a kind that the indebtedness created by them may not be made the subject of either general or special taxation. We are of opinion that the statute is constitutional.

It is contended by the petitioners that the Legislature did not intend to make the statute apply to Huntington Avenue. But the language is broad and sweeping, including in its ordinary meaning this public improvement as well as numerous others. The provision is general, referring to all such improvements which had been completed within six years. It contains nothing to suggest that the Legislature had in mind cases in which the work had been done under any particular statute or class of statutes. This work had been done under a special act. But it was a work of great magnitude, and other very expensive public works in Boston had been constructed under special acts. See Sts. 1893, c. 339; 1894, c. 416; 1895, c. 334; 1896, cc. 209, 516. There is nothing to indicate that this statute was intended to apply only to improvements made under general laws. Nor is there any reason to think that it should apply to cases in which the defect arose from the unconstitutionality of a statute, rather than to those in which the original assessment was defeated by some informality or illegality in the proceedings. It is plain that the statute was enacted to enable the city to assess betterments in cases where, on account of unconstitutionality or illegality, or other defect in the statutes or proceedings, a valid assessment could not otherwise be made. The fact that there were defects of different kinds, which made such an enactment desirable, is a sufficient reason for making it in general terms, without reference to any particular kind of defect. This great expenditure and the fact that the general assessment founded on it had been declared invalid were known to the Legislature. It is hardly conceivable that, in framing this statute with its general provisions, they intended that the payment of a part of the cost of Huntington Avenue by special assessment should be left unprovided for.

Under this statute the assessment cannot exceed one half of the cost of the improvements, and thus abutters are relieved from a part of the charge that might have been put upon them under the original act, which authorized a special assessment of the whole cost. This indicates liberality towards those upon whom invalid assessments had been or might be made under former statutes. Another statute, passed about the same time, indicates also the adoption of a more liberal policy towards abutters generally in the city of Boston. St. 1902, c. 521.

It is contended that the statute in question contemplates the making of assessments for improvements for which valid assessments of betterments have previously been made, and that in its provisions in reference to prior assessments which have not been wholly paid, or have been paid under protest and suits brought within three months after the payment to recover them, which suits are pending, it purports to authorize assessments which are not proportional or equal, and that therefore it is unconstitutional.

If it were true that the statute authorized assessments in cases in which prior valid assessments had been made, there might be force in this suggestion. If such valid previous assessments which had not been wholly paid might be revised and made to conform to the new assessment under the language of this statute, while such valid assessments as had been wholly paid were allowed to stand under the provision that no parcel for which assessment shall have been paid and not recovered back shall be subject to the payment of another assessment for that improvement, unequal and disproportional taxation would be likely to result; for the original assessments being valid, those who had paid without protest would be assessed at one rate which they would have no power to change, while those who had not paid would be entitled to revision, and presumably reduction, to conform to the new assessment at a different rate. But we are of opinion that the statute contemplates the making of but one valid assessment for any improvement, and that its reference to former assessments is to those that are invalid. In that view, this objection does not arise. Everybody who is affected at all by the proceedings under this statute will be entitled to be assessed in the same manner and at the same rate. The only peculiar provision is, that the estates of owners who have voluntarily paid former invalid assessments in full, so that there is no right to recover them back, shall not be subject to another assessment. Such owners cannot complain of the statute, for it does not affect their rights in any way, except as it diminishes for every tax-payer the amount to be paid by general taxation. The owners of other estates which are assessed under it cannot complain, because their estates are all assessed upon the same basis, and they do not suffer from leaving out those estates for which ample payments have already been made. If it appeared probable that

there were numerous previous invalid assessments which had been fully paid without protest, and which were less in amount than those which are likely to be made under this statute, so that the later assessments would be increased by omitting those estates for which previous invalid assessments had been paid, it might well be contended that the assessments are not proportional and equal, and that the statute is invalid. But presumably the Legislature did not contemplate the existence of such assessments. It does not appear, and we have no reason to suppose, that there are any such. On the other hand, under this statute, not exceeding one half of the expenses incurred for the improvement can be assessed, while under former statutes the whole could be assessed, if it did not exceed the special benefits. The statute must be presumed to have been enacted under an assumption by the Legislature that any previous invalid assessments that had been paid in full without protest, so that the estates would be exempt under this statute, were not less in amount than the sums that otherwise would be assessed upon them under this statute, and that therefore the owners of other estates do not suffer from their exemption. In this view the statute is constitutional in this particular. In each case the entry should be

*Petition dismissed.*

*M. Storey,* ( *C. Warren & J. Codman* with him,) for Winslow Warren.

*M. Donald,* for Eben D. Jordan and others.

*T. M. Babson,* for the respondents.

*H. W. Putnam,* by leave of court, filed a brief for parties having interests similar to those of the petitioners.